1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10   IN THE MATTER OF THE        )   Case No. 08-839M
     EXTRADITION OF              )
11                               )   ORDER DENYING RESPONDENT'S MOTION
     STEVEN WILLIAM GOODWIN,     )   TO DISMISS COMPLAINT FOR
12                               )   PROVISIONAL ARREST WARRANT AND FOR
     A Fugitive from the Government )   IMMEDIATE RELEASE OF RESPONDENT
13   of South Africa.            )
                                 )
14   _____)

15        Before the Court is a motion by Respondent Steven William Goodwin

16   to dismiss an extradition complaint and order his immediate release

17   from prison.  He argues that the extradition treaty governing his

18   extradition from the United States to South Africa is not in force

19   because the South African government failed to properly enact it.  For

20   the following reasons, the motion is denied.

21        In April 2008, the South African government requested that the

22   United States government obtain a provisional arrest warrant for

23   Respondent, who, allegedly, masterminded the collapse of Fidentia

24   Asset Management Ltd., the largest corporate collapse in South

25   Africa's history.  (*See* Declaration of Geoffrey Burrington Edwards.)

26   According to South Africa, there were 60,000 victims--primarily

27   orphans of deceased mineworkers--who lost an estimated $200,000,000

28

(U.S.) as a result of Respondent's scheme.   The extradition request was pursuant to an extradition treaty between the United States and South Africa.

The treaty was signed in September 1999, by then-United States Attorney General Janet Reno and South African Minister for Justice and Constitutional Development Dr. P.M. Maduna.   (Exhibit A to Declaration of Dan Marmalefsky In Support of Motion to Dismiss Complaint for Provisional Arrest Warrant and for Immediate Release of Respondent, Extradition Treaty, at p. 78.)   The treaty was later forwarded by the President of the United States to the Senate for advice and consent and the Senate approved the treaty.   The treaty was also ratified by South Africa's Parliament.   Thereafter, the treaty appeared to be the law of both the United States and South Africa.[1]

In March 2008, a trial court judge in South Africa held that the treaty was not in force in South Africa because it had never been incorporated into the domestic law of South Africa, as required by the South African Constitution.   (*See* Hearing Exhibits A and B, *Quagliani v. President of Republic of South Africa* and *Van Rooyen and Brown v. President of Republic of South Africa*, Case No. 959/2004, South African High Court, Transvaal Provincial Division.)[2]   According to Respondent, the South African government made two mistakes when it ratified the treaty.   First, it had the wrong executive officer sign the treaty--i.e., a minister as opposed to the President of South

---

[1]   Presumably, there have been extraditions between the United States and South Africa since the time the treaty was approved and became law, though the government could not cite to a case.

[2]   The government has represented that the South African government is appealing the trial court's decision.

1   Africa.  (Motion to Dismiss at 7.)  Second, the treaty was not

2   incorporated into South African domestic law, a constitutional

3   requirement.  (*Id*.)

4         Respondent requests that the Court read and follow the reasoning

5   set forth by the South African lower court, that the treaty was not

6   properly enacted under South African law and, therefore, Respondent

7   cannot be extradited pursuant to the treaty.  This, the Court is not

8   willing to do.

9         Whether South African law requires the President of South Africa

10  to sign treaties and the Parliament to, after approving a treaty, as

11  it did here, incorporate the treaty into its domestic law are

12  political questions involving the South African constitution, better

13  left for the South African courts, not a district court in Los

14  Angeles.  Obviously the executive branch of the South African

15  government believes that the treaty is still in force; it submitted

16  its extradition request after the South African trial court ruled that

17  the treaty was no longer in force.  So, too, does the executive branch

18  of the United States, which included in its papers the existence of

19  the South African court's decision.  That is controlling here.  *See*,

20  *e.g.*, *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996) (noting State

21  Departments' actions showing intent to continue treaty between United

22  States and newly independent Singapore is a factor in establishing

23  existence of valid extradition treaty, despite the fact that United

24  States and independent Singapore never entered into treaty).

25        If Respondent has a constitutional challenge to the South African

26  government's interpretation of its laws, it should raise that

27  challenge in a South African court, not here.  The treaty appears

28  valid on its face.  The governments of the United States and South

3

1  Africa are manifesting their beliefs that it is valid by acting in

2  conformance with the treaty.  Respondent has not raised any claim that

3  United States law was not followed in enacting the treaty or in

4  requesting a provisional arrest warrant pending extradition.  As such,

5  the Court concludes that the government's request for a provisional

6  arrest warrant should be granted and Respondent's motion to dismiss

7  should be denied.

8       IT IS SO ORDERED.

9       DATED:    April  22  , 2008.

10

11

12  _____

13  PATRICK J. WALSH
    UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  S:\PJW\CRIMINAL\Goodwin, S 839\Ord_deny MTD.wpd

4